**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride, Esq. (297557)
ryan@kazlg.com
4455 E. Camelback Road, Suite C250
Phoenix, AZ 85018
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

Attorney for Plaintiff,
Mark Aussieker

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Mark Aussieker, individually and on behalf of others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**Roof Doctors USA, Inc.**<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227** *et seq.*<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

Plaintiff Mark Aussieker ("Plaintiff") brings this action against Defendant Roof Doctors USA, Inc. ("Defendant") to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the TCPA, 47 U.S.C. § 227 *et seq.*, (the "TCPA").

2. Defendant operates as a full service roofing repair company. To promote its services, Defendant engages in unsolicited marketing, harming thousands of

consumers in the process.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals.  Plaintiff also seeks statutory damages on behalf of himself and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Moreover, jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant.  Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call that is in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

5. Jurisdiction is also proper because there exists a federal question based on the fact that Plaintiff's claims arise from the Telephone Consumer Protection Act, 47. U.S.C. § 227 *et seq.* ("TCPA"), a federal statute.

6. Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within the district, thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's conduct against Plaintiff occurred within the State of California where Plaintiff resides, subjecting Defendant to the State of California.

**PARTIES**

7. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Fair Oaks, California.

8. Defendant is a California incorporated company whose principal office is located at 8430 Madison Ave., Fair Oaks, California 95628.

9. Plaintiff is informed and believes that Roof Doctors USA, Inc. does business as the Roof Doctors.

**THE TCPA**

10. The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

11. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; see also *Martin v. Leading Edge Recovery Solutions*, LLC, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

12. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of

privacy, regardless of the type of call….” *Id.* at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

13. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system ("ATDS"); and (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

14. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

15. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), aff'd, 755 F.3d 1265 (11th Cir. 2014).

16. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

17. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express written consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis supplied).

18. To obtain express written consent for telemarketing calls, a defendant must

establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

19. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. See *Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

20. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

21. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

22. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the

1   call or in the future.  *Id.*

2   23. In other words, offers "that are part of an overall marketing campaign to sell

3   property, goods, or services constitute" telemarketing under the TCPA.  See In re

4   Rules and Regulations Implementing the Telephone Consumer Protection Act of

5   1991, 18 FCC Rcd. 14014, ¶ 136 (2003).

6   24. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate

7   that it obtained the plaintiff's prior express consent.  See In the Matter of Rules

8   and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd.

9   7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-

10  advertising calls").

11  25. Further, the FCC has issued rulings and clarified that consumers are entitled to the

12  same consent-based protections for text messages as they are for calls to wireless

13  numbers. See *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir.

14  2009) (The FCC has determined that a text message falls within the meaning of

15  "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014

16  WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of

17  showing that it obtained Plaintiff's prior express consent before sending him the

18  text message). (emphasis added).

19  26. As recently held by the United States Court of Appeals for the Ninth Circuit:

20  "Unsolicited telemarketing phone calls or text messages, by their nature, invade

21  the privacy and disturb the solitude of their recipients. A plaintiff alleging a

22  violation under the TCPA 'need not allege any additional harm beyond the one

23  Congress has identified.'"  *Van Patten v. Vertical Fitness Grp.*, No. 14-55980,

24  2017 U.S. App. LEXIS 1591, at *12 (9th Cir. May 4, 2016) (quoting *Spokeo, Inc.

25  v. Robins*, 136 S. Ct. 1540, 1549 (2016) (emphasis original)).

26  27. In a recent decision, the Supreme Court interpreted the term "automatic telephone

27  dialing system" and held that "[t]o qualify as an 'automatic telephone dialing

28  system,' a device must have the capacity either to store a telephone number using

CLASS ACTION COMPLAINT

a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163 (2021) (emphasis added).

28. In *Duguid*, the Supreme Court provided an example of such systems, stating: "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time." *Id.* at 1171-72 fn. 7.

29. Further, both *Duguid* and the legislative history of the TCPA are clear that the original focus on prerecorded voice technology prohibition was the fact that such communications involved agentless calls, not on the question of whether a literal voice was used during those agentless calls. *See* Hearing Before the Subcommittee on Communications of the Committee on Commerce, Science and Transportation, United States Senate One Hundred Second Congress First Session July 24, 1992, Testimony of Robert Bulmash and Steve Hamm at pg 11; 7 FCC Rcd. 8752 (F.C.C. September 17, 1992).

30. The Sixth Circuit has also recognized this distinction: "Congress drew an explicit distinction between 'automated telephone calls that deliver an artificial or prerecorded voice message' on the one hand and 'calls place by 'live' persons' on the other." *Ashland Hosp. Corp. v. Serv. Employees Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737,743 (6th Cir. 2013).

31. Similarly, the FTC has observed that "prerecorded calls are by their very nature one-sided conversations, and if there is no opportunity for consumers to ask questions, offers may not be sufficiently clear for consumers to make informed choices before pressing a button or saying yes to make a purchase." 73 FR 51164-01, 51167 (Aug. 29, 2008).

## **FACTS**

32. On August 25, 2020, Plaintiff began using a new number on his cellular telephone, which had the ability to send and receive text messages.

33. On November 10, 2021, Plaintiff received an unsolicited text message, which inquired whether Plaintiff or someone Plaintiff knows is in need of a contractor that can do roof repair. Below is the content of that text message:

> "Hey, I need a Contractor that can do roof repair, and dry-rot repair on eaves and sub-roof areas in the Sacaremento area. The work will be year round and pays good. Call or text me if this sounds good to you. My name is Craig at Roof Doctors"
> 916.412.6445
>
> You've agreed to receive messages from Roof Doctors. Reply STOP to unsubscribe or HELP for help. Msg&Data rates may apply.

34. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., soliciting contractors services.

35. Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

36. At no point in time did Plaintiff provide Defendant with his express written consent to be contacted using an ATDS.

37. Plaintiff is the subscriber of the phone associated with the number that was messaged and is financially responsible.

38. The impersonal and generic nature of Defendant's text message demonstrates that Defendant utilized an ATDS in transmitting the messages.  See *Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016) ("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing

*Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner and sent from short code); *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130; *Robbins v. Coca-Cola Co.*, No. 13-CV-132-IEG NLS, 2013 U.S. Dist. LEXIS 72725, 2013 WL 2252646, at *3 (S.D. Cal. May 22, 2013) (observing that mass messaging would be impracticable without use of an ATDS)).

39. The text message originated from the telephone number (855)-773-0954, a number which is owned and operated by Defendant.

40. Annoyed by the unwanted advertising material, Plaintiff texted back "HELP". Almost immediately, Defendant responded with what appeared to be another automated text stating:

> Roof Doctors Alerts: Need Help?
> Call 9164126445. Msg&data rates may apply.
> No more than 10 msgs/month. Reply STOP to cancel.

41. The immediate response from Defendant containing generic messaging to Plaintiff indicates the use of an ATDS.

42. Defendant's unsolicited text message caused Plaintiff actual harm, including invasion of his privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to his daily life.

43. Plaintiff texted Defendant to determine why the unwanted text messages had been sent to his phone. Plaintiff responded with:

Please send proof that you have permission to text me with an automatic
   dialed.

44. Defendant informed Plaintiff that Defendant must have made a mistake. Plaintiff responded telling Defendant he believed they had spammed other contractors as well and asked for proof from Defendant that they had permission to text him. Defendant did not respond.

45. Defendant's text messages also can slow cell phone performance by taking up space on the recipient phone's memory. See https://www.consumer.ftc.gov/articles/0350-text-message-spam#text (finding that spam text messages can slow cell phone performance by taking up phone memory space).

46. Upon information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, the same or substantially similar unsolicited text messages *en masse* to thousands of cellular telephone subscribers nationwide in an effort to advertise its services.

47. Upon information and belief, Defendant determined the content of the marketing text messages, including the exact language of the messages, as well as the timing of the message campaign.

48. The text messages sent to Plaintiff were impersonal and based on a template.

49. Upon information and belief, the automated text messaging system used by Defendant to send the text messages has the capacity to store or produce telephone numbers to be messages, using a random or sequential number generator.

50. Upon information and belief, the automated text messaging system used by Defendant to send the text messages also has the capacity to, and does, dial telephone numbers stored as a list or in a database without human intervention.

51. As evidenced by Defendant's messages, Plaintiff was not interacting with a live agent but rather an agentless text blast generated by a computer.

52. Moreover, the message sent to Plaintiff was drafted in advance and sent out automatically based on pre-programmed parameters.

53. On information and belief, there was no human intervention involved in sending

the text messages aside from creating the text to be sent, inputting a list of telephone numbers, and selecting the dates and times the text messaging campaign would commence.

54. Upon information and belief, the text message sent to Plaintiff was placed via Defendant's *SMS Blasting Platform*, i.e. an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1) and as prohibited by 47 U.S.C. § 227(b)(1)(A).

55. The text message sent to Plaintiff's cellular telephone was not sent by a live agent and thus created a one-sided conversation in which Plaintiff could not receive a response to his questions and/or concerns. The text message also was sent in an automated fashion as a result of computerized campaigns that were pre-programmed in advance to send messages out to large groups of consumers all at once, either sequentially or via algorithmic dialing, i.e. in an automated fashion by a computer.

56. In Merriam Webster's Dictionary "voice" is defined as "an instrument or medium of expression." It defines "artificial" as "humanly contrived…often on a natural model : MAN-MADE" and "lacking in natural or spontaneous quality."

57. The messages sent to Plaintiff by Defendant via an SMS blasting platform employed a text message as an instrument or medium of expression to deliver an automatic message drafted in advance of being sent, i.e. that of an SMS message, to convey a telemarketing communication to Plaintiff.  Such SMS blasting platforms are incapable of spontaneity, as they must be programmed by the operator to automatically send messages out, en masse, pursuant to preprogrammed parameters.

58. Accordingly, Defendant's message utilized an "artificial voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

59. In Merriam Webster's Dictionary, "prerecorded" is defined as "recorded in advance."  "Recorded" is defined as "to set down in writing."

CLASS ACTION COMPLAINT

60. Upon information and belief, the text message sent to Plaintiff's cellular telephone was set down in writing in advance by Defendant, whose employees wrote out the standard automated messages that were to be sent to Plaintiff and other class members, and by way of preprogrammed SMS blasting, entered the prerecorded message into the SMS Blasting platform, and thereafter sent these messages pursuant to scheduled blasts that were programmed by Defendant. Thus, Defendant employed a text message as an instrument or medium of expression to deliver a prerecorded message drafted in advance of being sent.

61. Thus, Defendant's message utilized a "prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

62. Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

63. Plaintiff suffered a concrete and particularized injury in fact as a result of the SMS blast message he received. The message invaded Plaintiff's privacy, causing annoyance, wasting his time, consuming use of his smartphone device without authorization, and otherwise invading his privacy and intruding into his personal affairs without permission.   The text message also constituted a form of the precise harm that Congress was attempting to prohibit with the TCPA, which was designed to remedy invasions of privacy and nuisances caused to Americans by automated telemarketing messages sent without consent. Plaintiff actually suffered this precise injury by receiving the unwanted text message, and having his privacy so invaded through a disturbance of his solitude, and unwanted intrusion of his technology and personal space.   Accordingly, Plaintiff has Article III standing to seek redress for these violations in Federal Court.

## **CLASS ALLEGATIONS**

64. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of himself and all others similarly situated.

65. Plaintiff brings this case on behalf of a Class (the "Class") defined as follows:

> All persons within the United States who received any telemarketing text messages from Defendant to said person's cellular telephone made through the use of any automatic telephone dialing system or an artificial or prerecorded voice and such person had not previously provided express consent to receiving such calls within the four years prior to the filing of the original Complaint.

66. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

**NUMEROSITY**

67. Upon information and belief, Defendant has sent automated and/or prerecorded messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

68. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

69. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

    i.    Whether Defendant sent non-emergency messages to Plaintiff's and Class members' cellular telephones using an ATDS;

    ii.    Whether Defendant sent non-emergency messages to Plaintiff's and Class members' cellular telephones using an artificial or prerecorded

voice;

iii.    Whether Defendant can meet its burden of showing that it obtained prior express written consent to send such messages;

iv.    Whether Defendant's conduct was knowing and willful;

v.    Whether Defendant is liable for damages, and the amount of such damages; and

vi.    Whether Defendant should be enjoined from such conduct in the future.

70. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

71. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories regarding unsolicited text messages being sent by Defendant to Class members.

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

72. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTIONS IS SUPERIOR AND ADVISABLE**

73. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars,

the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

74. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)
**(On behalf of Plaintiff and the Class)**

75. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

76. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

77. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to send non-emergency text messages, which constituted a message delivered by an artificial or prerecorded voice, to the cellular telephones of Plaintiff and the other members of the Class defined below.

78. These messages were sent without regard to whether Defendant had first obtained express permission from the dialed party to send them. In fact, Defendant did not

have prior express consent to send the text messages to Plaintiff and the other members of the putative Class when the messages were sent.

79. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to send non-emergency, automatically generated text messages to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

80. Defendant knew that it did not have prior express consent to send these automated text messages and knew or should have known that it was using equipment that constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

81. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future text messages Id.

## COUNT II

## Violation of the TCPA, 47 U.S.C. § 227(b)(1)(C)

### (On behalf of Plaintiff and the Class)

82. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

83. It is a violation of the TCPA "to use … [a] device to send … an unsolicited advertisement …." 47 U.S.C. § 227(b)(1)(C).

84. The term unsolicited advertisement means "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

85. Defendant sent Plaintiff and other Class members an unsolicited advertisement to call or text Defendant for a consultation with a contractor for roof repair.

86. These messages were sent without Plaintiff or the other Class member's prior

express consent.

87. Thus, Defendant has violated § 227(b)(1)(C) of the TCPA by using by sending unsolicited messages to Plaintiff and the other members of the putative Class without their prior express written consent.

88. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. Id.

## COUNT III

## Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)

### (On Behalf of Plaintiff and the Class)

89. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

90. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

91. Defendant knew that it did not have prior express consent to send automated marketing text messages and knew or should have known that its conduct was a violation of the TCPA.

92. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its automatically generated marketing messages, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(b)(3) of the TCPA.

93. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $1,500.00 in damages for each violation. Plaintiff and the class are also entitled to an injunction against future calls. Id.

## PRAYER FOR RELIEF

94. **WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

  a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and counsel as Class Counsel;

  b) An award of actual and statutory damages;

  c) An order declaring that Defendant's actions, as set out above, violated the TCPA;

  d) A declaratory judgement that Defendant's telephone dialing equipment constitutes an automatic telephone dialing system under the TCPA;

  e) An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interest of the Class;

  f) An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining recipients' consent to receive messages and calls made with such equipment; and

  g) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff and the putative Class Members hereby demand a trial by jury.

Dated: July 15, 2022    Respectfully submitted,

         **KAZEROUNI LAW GROUP, APC**

         By: /s/ Ryan L. McBride
         Ryan L. McBride, Esq.
         Attorney for Plaintiff and the Proposed Class